(37 Misc. Rep. 136.)

## KUSTER v. KUSTER.

(Supreme Court, Special Term, New York County.   January, 1902.)

HUSBAND AND WIFE—ACTION FOR SEPARATION—EVIDENCE.

> Plaintiff brought an action for separation against her husband, who had caused her to be committed to an asylum, on the ground that the treatment was cruel and inhuman, and that it was unsafe or improper for her to live with him.   It appeared that she had been subject to the delusion that he intended to poison her, that he had received medical advice before the time of her commitment that she was suffering from an incurable form of insanity, and that she might become violent.   Her brother, with whom she had lived for a while, had also found it necessary to commit her to an asylum.   *Held* insufficient to authorize the relief asked, it appearing that the husband had been led by an honest desire to benefit the wife in all that he had done.

Action by Eunice C. Kuster against Louis Kuster for separation. Judgment for defendant.

Albert Falck and Maurice S. Hyman, for plaintiff.
Meyer & Philippeau, for defendant.

GREENBAUM, J.   The plaintiff and defendant were married in December, 1895.   The first two years of their wedded life were happy. Thereafter the plaintiff became possessed of delusions that she was

being poisoned, and that her husband was the chief conspirator in a plan, which she believed existed, to poison her. Acting upon this delusion, plaintiff did many unusual and extraordinary things, involving the accusation of various persons with nefarious designs upon her and at times upon her husband. She suspected waiters, servants, tradespeople, and apothecaries of being in league against her, and took strange and peculiar precautions about her food. The medical advice given to defendant concerning his wife was that she was afflicted with a form of insanity known as "paranoia," an incurable disease, and that she was in danger of committing acts of violence upon herself and others. For several years the husband humored the odd whims and fancies of his wife, and did all that a true man in such an unfortunate situation could do. Plaintiff's condition becoming worse, it was suggested that a trip to her brother's home in the town of Nevla, Iowa, might prove beneficial. After a short stay with her brother's family, her husband meanwhile attending to his business duties in New York, her delusions became so serious that her brother felt obliged, for his own safety and welfare, to place her in St. Bernard's Hospital, Council Bluffs, Iowa, for mental treatment. From the testimony of the lady superior and of the attendants it appears that at the hospital this plaintiff gave evidence of the same poison delusions as before, with the same suspicions as to designs upon her life. It should be here observed that plaintiff's brother is a man of standing in his community, and that his actions indicated that he was a devoted and sympathetic brother. Plaintiff escaped from St. Bernard's Hospital, and rejoined her husband. A few months after her return the defendant secured from the county judge of Kings county her commitment as an insane person to the Long Island Home, Amityville, L. I. She was subsequently transferred to St. Vincent's retreat, Harrison. Appearing to have improved at the last-mentioned place, defendant had plaintiff paroled for 30 days, and after living with defendant at a hotel for 29 days plaintiff disappeared, and then brought this suit, charging defendant with acts of cruelty and violence, and with unlawful incarceration in various institutions upon the pretended claim that she was insane.

Giving due consideration to such of the acts of defendant which plaintiff's counsel asserts showed an unlawful detention of plaintiff for a brief period, and a desire on defendant's part to hasten his wife's commitment to the Long Island Home without an opportunity of being heard in court, and bearing in mind the attempt made by defendant after the commencement of this suit to have plaintiff again committed as an insane person, I am, nevertheless, convinced that all these acts were inspired, however ill-conceived, by an honest desire on the defendant's part to benefit plaintiff, and done because he believed the exigencies of the case warranted them. The criticisms of the defendant appear to be rather technical than substantial.

With respect to some unfounded jealous suspicions of defendant which he injudiciously entertained, and afterwards repented of, it is

sufficient to say that he made due apology to plaintiff for his ill-grounded beliefs, and that due allowance should be made for the terrible mental strain to which defendant was being subjected. Aside from these acts, defendant appears to have conducted himsel' with commendable devotion as a faithful husband. No improper motive has been indicated which might have prompted him to desire his wife's removal to an institution.

Plaintiff produced two well-known experts on mental diseases, who shortly before the trial, and about nine months after she had left the defendant, examined the plaintiff, and gave their unqualified opinions that she is not a paranoiac, and that she is not insane. Defendant's experts insist that plaintiff is still a paranoiac, and that she is successfully, for the time being, hiding her delusion. It is difficult to reconcile these conflicting medical opinions. But even plaintiff's experts admit that a person presenting the conditions alleged to have existed when plaintiff was committed to the Long Island Home would not be deemed sane. The testimony of numerous disinterested witnesses as to the many strange acts of the plaintiff is convincing that the plaintiff presented conditions which, according to all the experts, justified the belief that plaintiff was insane, and therefore warranted the exercise of such stringent steps as her commitment to an institution. To an ordinary observer plaintiff gave no evidence upon the trial of being insane, and it may well be that her delusions have disappeared. The husband stands ready to receive her and care for her.

Plaintiff's counsel lays considerable stress upon the point that the good faith of the defendant is not involved, and that the fact that plaintiff was restrained of her liberty by her husband entitles her to a separation, upon the ground that it is unsafe for her to cohabit with him. The argument seems to me to be specious. There are general expressions of opinion found in the cases, such as the following one taken from Uhlmann v. Uhlmann, 17 Abb. N. C. 248: "If the causes for which a divorce is sought involve personal danger, if they attack the great law of self-preservation, they are sufficient, as that is of primary and paramount obligation. It will be observed that this passage takes no account of the mode in which personal danger is caused. It is the fact of its existence that is material." That this general statement was not intended to apply to a case where the act which is claimed to be cruel is provoked by the condition of the party complaining is evident upon examination of the authorities. In the case of Curtis v. Curtis, 1 Swab. & T. 192, cited by the learned counsel for plaintiff in support of his contention, the following language is used: "The method and causes cannot hold the hand of the court, unless the wife is to blame, which is a wholly different consideration." In other words, a husband would not be permitted to escape the consequences of danger to his wife, brought about, for example, by his insane or drunken condition, on the plea that he is not responsible for the acts which menace the happiness and safety of his spouse. In such a case the question of good faith or motive would necessarily be excluded from consideration. Not so, however, in a

case like that under review. It is the duty of the husband to protect his wife. If in the performance of that duty he is confronted with a situation which requires him to resort to measures that affect her personal liberty, it would seem to be of the utmost importance to inquire rigidly into the motive and good faith of the husband. See De Meli v. De Meli, 5 Civ. Proc. R. 306; Kennedy v. Kennedy, 73 N. Y. 369.

Under all the circumstances of this case, I am constrained to believe that plaintiff has failed to present a case entitling her to a separation on the ground of her husband's cruelty, or because it would be unsafe to place herself under his care. The complaint is dismissed, without costs.

Complaint dismissed, without costs.